UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 6, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Timeka M. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-03194-BAH

Dear Counsel:

On December 12, 2022, Plaintiff Timeka M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9), the parties' dispositive filings[1] (ECFs 10 and 14), and Plaintiff's reply (ECF 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard I will GRANT Plaintiff's motion insofar as it seeks remand as remedy, REVERSE the SSA's decision, and REMAND the case to the SSA for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on February 26, 2020,[2] alleging a disability onset of October 1, 2019. Tr. 76. Plaintiff's claim was denied initially and on reconsideration. Tr. 94–95, 118. On May 19, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 29–74. Following the hearing, on August 2, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 11–28. The Appeals Council denied Plaintiff's request for review,

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Here, Plaintiff docketed her filing as a motion for summary judgment.

[2] The parties and the ALJ refer to February 26, 2020, as the date Plaintiff filed the application. Tr. 14; ECF 10-1, at 1; ECF 14, at 2. While this aligns with the filing date listed on the initial Disability Determination and Transmittal, Tr. 75–95, Plaintiff's application summary lists March 25, 2020, as the application date, Tr. 218. Because the parties and the ALJ use February 26, 2020, as the relevant application date, so too will the Court.

[3] 42 U.S.C. §§ 301 et seq.

*Timeka M. v. Kijakazi*
Civil No. 22-03194-BAH
September 6, 2023
Page 2

Tr. 3–8, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 26, 2020, the application date." Tr. 16. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "schizoaffective disorder, depression, anxiety disorder, and posttraumatic stress disorder (PTSD)." *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform simple, routine, and repetitive tasks not at a production-based pace. She can make simple work-related decisions and occasionally interact with supervisors and coworkers but should not interact with the public. The claimant can tolerate occasional changes in the work setting.

Tr. 19. The ALJ determined that Plaintiff was unable to perform past relevant work as a case aid (DOT[4] #195.367-010) but that she could perform other jobs that existed in significant numbers in the national economy. Tr. 22–23. Therefore, the ALJ concluded that Plaintiff was not disabled.

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Timeka M. v. Kijakazi*
Civil No. 22-03194-BAH
September 6, 2023
Page 3

Tr. 24.

### III. LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises a single, overarching argument on appeal, specifically that the ALJ erroneously evaluated the medical opinion of Plaintiff's therapist, Dr. Sam Okanume. ECF 10-1, at 6. Plaintiff argues that the ALJ failed to appropriately assess the supportability and consistency of Dr. Okanume's opinion. ECF 10-1, at 7–11. Defendant counters that the ALJ adequately considered Dr. Okanume's opinion and appropriately explained their analysis. *See* ECF 14, at 6–11.

The process an ALJ must follow when evaluating medical opinions is well established. "For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, Civ. No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 404.1520c). An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* (citing 20 C.F.R. § 404.1520c(b)). Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions. *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision." *Id.* Consistency generally refers to the consistency between the opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). Supportability generally refers to "the objective medical evidence and supporting explanations presented by a medical source[.]" *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)).

The issue of the ALJ's supportability analysis is determinative in this case. "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, Civ.

No. 20-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citations omitted); *see also Mary W. v. Comm'r of Soc. Sec.*, Civ. No. 20-5523, 2022 WL 202764, at *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of . . . opinions, the ALJ needed to evaluate what the [physicians] said they based their opinions on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency[.]"), *report and recommendation adopted sub nom. Wiseman v. Comm'r of Soc. Sec.*, Civ. No. 20-5523, 2022 WL 394627 (S.D. Ohio Feb. 9, 2022). As such, this Court has noted that supportability must be considered independently from consistency. *See Duane H. v. Kijakazi*, Civ. No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors."). This Court has made clear that an analysis of the consistency of an opinion with other opinions from the same provider and the rest of the record is not sufficient to constitute a supportability analysis. *See Carlos F. v. Kijakazi*, Civ. No. BAH-22-2049, 2023 WL 3293086, at *4–5 (May 5, 2023) (finding that analysis of inconsistency between two opinions of one medical source was insufficient to assess supportability). The ALJ must assess the relevance of "the objective medical evidence and supporting explanations presented by a medical source" to the ultimate finding advanced by that medical expert. 20 C.F.R. § 404.1520c(c)(1).

Here, the ALJ found Dr. Okanume's opinion that Plaintiff had multiple "marked" and "extreme" limitations in work-related mental activities to be "not persuasive." Tr. 21. Though Dr. Okanume found that Plaintiff had difficulty being productive and had numerous work-related limitations, the ALJ found this opinion unpersuasive because "his opinion is not consistent with the treatment record as a whole, including his own treatment notes, for the reasons given to Dr. Druruthy's [sic] opinion."[5] *Id.* Earlier in the opinion, the ALJ concluded that Dr. Durruthy's assessment that Plaintiff had "moderate limitations in all 'paragraph B' criteria'" was "somewhat persuasive" because "the claimant's positive findings[6] were generally noted to be mild to

---

[5] While not dispositive, the Court highlights the ALJ's presumably inadvertent replacement of Dr. Okanume's name with Dr. Durruthy's name in the paragraph assessing Dr. Okanume's opinion, all while misspelling Dr. Durruthy's name. *See* Tr. 21. This "scrivener's error" does not preclude judicial review of this analysis. *See Hudon v. Astrue*, No. 10-CV-405-JL, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011) ("In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent."). However, the Court notes that errors of this kind are troubling when they present, as they did here, in critical sections of the ALJ's analysis.

[6] The term "the claimant's positive findings" is nowhere clearly defined by the ALJ nor the parties. The citations offered by the ALJ suggest that the term "positive findings" likely is intended to refer to Nurse Practitioner Tom Gates' observations of Plaintiff and Dr. Okanume's "diagnostic impressions" of Plaintiff. *See* Tr. 21 (citing to "Exhibits 1F and 5F" after sentence noting "positive findings"); Tr. 299–307 (Exhibit 1F: medical notes from Tom Gates, including descriptors such as "mild" and "moderate"); Tr. 354 (report from Exhibit 5F containing medical notes from Dr. Okanume and Diversity Counseling Associates noting several "slight" or "moderate" findings in psychosocial assessment of Plaintiff). This appears to align with the parties' understanding of the

moderate," because she "was inconsistent with both appointments and medication," and because she "was a single mother to four[7] children, cooked, assisted her disabled father, shopped, and drove." *Id.*

The ALJ makes no observations on the "objective medical evidence and supporting explanations" put forward by Dr. Okanume. Instead, the ALJ repeats Dr. Okanume's findings regarding Plaintiff's limitations, notes that Dr. Okanume has a "treating relationship" with Plaintiff, and states that his findings are inconsistent with the rest of the record, including that Dr. Okanume's reports are inconsistent with each other. Tr. 21. Yet the fact that there are inconsistencies in Dr. Okanume's reports goes to the question of consistency, not the question of supportability. *See Carlos F.*, 2023 WL 3293086, at *4 (finding supportability analysis insufficient when the ALJ based such analysis entirely on the finding "that the assessment lacked supportability because it was inconsistent with [the doctor's] previous assessments."). The incorporated reasoning laid out in the analysis of Dr. Durruthy's medical opinion also goes to the consistency factor, rather than the supportability factor. The matter of Plaintiff's daily activities and her medication adherence are external to Dr. Okanume's opinion. *See* Tr. 21. The reference to "positive findings" from Dr. Okanume and Nurse Practitioner Gates again goes to the question of consistency. *See id.*; *see also Carlos F.*, 2023 WL 3293086, at *4 (finding that ALJ's assertion of inconsistencies between a provider's medical opinions went only to the question of consistency when provider made "no reference to any of his previous assessments" in opinion being evaluated). Dr. Okanume made no reference to the so-called "positive findings" highlighted by the ALJ in his assessment, nor did he reference any other "diagnostic impressions" from that report. *See* Tr. 345, 359–60. Thus, "it is unclear how the ALJ could have evaluated Dr. [Okanume's] supporting explanations based on information that was not contained in those explanations." *Carlos F.*, 2023 WL 3293086, at *4. The ALJ does not make any other attempt to explore Dr. Okanume's "diagnostic techniques, data collection procedures/analysis," methods of examination, or any explanations offered by the doctor. *Reusel*, 2021 WL 1697919, at *7 n.6. As such, the ALJ's decision fails to adequately address, as it must, "the objective medical evidence and supporting explanations presented by" Dr. Okanume. *See* 20 C.F.R. § 404.1520c(c)(1).

This error is not harmless. Had the ALJ appropriately considered the supportability of Dr. Okanume's opinion, they may have come to a different determination of the weight that opinion should be given. This revised weight could have, in turn, altered Plaintiff's RFC, and potentially impacted the determination of whether Plaintiff is disabled. Thus, remand is required.

On remand, the ALJ should explicitly assess the supportability of Dr. Okanume's medical opinion pursuant to 20 C.F.R. § 404.1520c(c)(1). In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Because the case is being remanded on other grounds, I need not address Plaintiff's

---

phrase. *See* ECF 10-1, at 10 (equating "positive findings" with "diagnostic impressions" from Dr. Okanume).

[7] The ALJ erroneously refers to Plaintiff's "four" children instead of five, despite Plaintiff correcting the ALJ on this point during the hearing. Tr. 36.

*Timeka M. v. Kijakazi*
Civil No. 22-03194-BAH
September 6, 2023
Page 6

argument regarding the consistency factor analysis.  On remand, the ALJ is welcome to consider this argument and make any required adjustments to the opinion.

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g).  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.


Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge